**TA LEGAL GROUP PLLC**
Taimur Alamgir, Esq.
Matthew Daidola, Esq.
205 E Main Street, STE 3-2
Huntington, NY 11743
(914) 552-2669
tim@talegalgroup.com
matthew@talegalgroup.com
*Attorneys for Plaintiff Joseph Greco*

### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOSEPH GRECO,<br><br>Plaintiff,<br><br>- against -<br><br>NASSAU COUNTY SHERIFF DEPARTMENT, NASSAU COUNTY, and MICHAEL SPOSATO,<br><br>Defendants. | Case No.:<br><br><br>**COMPLAINT**<br><br><br>**Jury Trial Demanded** |

Plaintiff, Joseph Greco ("Plaintiff or "Greco"), by and through his undersigned counsel of record, TA Legal Group PLLC hereby files this Complaint ("Complaint") against Defendants Nassau County Sheriff Department ("NCSD"), Nassau County ("NC"), and Michael Sposato ("Sposato") (collectively "Defendants"), and alleges as follows:

### INTRODUCTION

1.    This action arises from the persistent and unlawful retaliation, discrimination, and constitutional violations committed by NCSD against Plaintiff Joseph Greco, an NCSD

employee who exercised his statutory and constitutional rights, ultimately culminating in his constructive discharge.

2.      After Greco took approximately three months of protected leave under the Family and Medical Leave Act ("FMLA") to care for his seriously ill father, Defendants engaged in continuous and systematic retaliation, including repeated unit transfers, involuntary shift changes, and passing over his civil-service promotional list number on four separate occasions without explanation. These actions violated the FMLA, 29 U.S.C. § 2615(a)(1), and its implementing regulations, 29 C.F.R. § 825.220(c).

3.      Defendants further retaliated against Greco following the coerced disclosure of his medical conditions in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., and Section 504 of the Rehabilitation Act of 1973. Plaintiff has exhausted his administrative remedies with the Equal Employment Opportunity Commission ("EEOC") and timely files this action following the receipt of a Notice of Right to Sue.

4.      Defendants used Greco's medical conditions as a pretext to seize his duty and personal firearms indefinitely, place him on restricted duty, and reassign him to an administrative post. NCSD's seizure of his firearms, conducted without any hearing, notice, or meaningful procedural safeguards, deprived Greco of due process in violation of the Fourteenth Amendment to the United States Constitution, U.S. Const. amend. XIV, § 1.

5.      The relentless hostility, discrimination, and unconstitutional deprivations created an intolerable work environment that exacerbated Greco's medical conditions, forcing him to take disability leave. Ultimately, Defendants' continuous and egregious misconduct resulted in Greco's constructive discharge on May 14, 2026.

6.      NCSD, under the direction of Commissioner Sposato, has a well-documented history of targeting employees with disabilities, and Greco's treatment is consistent with this

ongoing pattern of unlawful conduct.

## CLAIMS

7.      Plaintiff seeks recovery under FMLA 29 U.S.C. § 2615(a)(1) and 29 C.F.R. § 825.220(c) for these egregious and continuous violations. Plaintiff is entitled to recover damages from Defendants based on the following: (1) back pay and lost benefits, (2) actual monetary losses, (3) liquidated damages, (4) statutory interest, and (4) attorney's fees and costs.

8.      Plaintiff further alleges, pursuant to Section 504 of the Rehabilitation Act of 1973, that he is entitled to recover the following remedies and damages from Defendants: (1) equitable and injunctive relief, (2) back pay and front pay,  (3) compensatory damages, and (4) attorney's fees and costs.

9.      Plaintiff further alleges, pursuant to 42 U.S.C. § 1983 in violation of his U.S. Const. amend. XIV, § 1 rights, that he is entitled to recover the following remedies and damages from Defendants: (1) lost wages, (2) emotional distress, (3) punitive damages, (4) injunctive relief, (5) nominal damages, and (6) attorney's fees and costs (pursuant to 42 U.S.C. § 1988).

## PARTIES

**Plaintiff**

10.      Greco is a resident of Suffolk County, New York.

11.      Greco has worked at NCSD for over 24-years, starting at the rank of a corrections officer. In October 2020, while assigned as an instructor to the academy, Greco passed his promotional exam.

12.      In September 2022, he was transferred to Medical Investigations ("MI") and was designated as Investigator.

13.      Greco's firearms were seized in August 2023. He was placed on restrictive duty administrative status.

14.     His promotional list number was passed over for a fourth time in April 2025 as part of the continuing violation.

15.     Greco was out on disability leave for anxiety and Post-Traumatic Stress Disorder ("PTSD") until his forced retirement in May 2026.

**Defendant**

16.     **Defendant NCSD** is a division of the Nassau County government, a local municipality in New York State, operating under the Office of the Sheriff. It is divided into two main divisions- Division of Corrections and Division of Enforcement.

17.     **Defendant Sposato** was the Sheriff of Nassau County from 2008 to 2018. In September 2022, he was appointed as Nassau Commissioner of Corrections.

18.     **Defendant Nassau County** is a municipal corporation organized under the laws of the State of New York, with governmental offices located in Nassau County, New York. At all relevant times, Nassau County operated, controlled, funded, supervised, and/or maintained the Nassau County Sheriff Department and Nassau County Department of Corrections.

## MUNICIPAL LIABILITY AND FINAL POLICYMAKER ALLEGATIONS

19.     At all relevant times, Defendant Nassau County, through the Nassau County Sheriff Department and/or Nassau County Department of Corrections, acted under color of state law and was responsible for the policies, customs, practices, supervision, training, and discipline of NCSD personnel.

20.     At all relevant times, Defendant Michael Sposato served as Nassau County Commissioner of Corrections and exercised final or delegated policymaking authority over the challenged conduct, including decisions concerning restricted duty assignments, firearm seizure and retention practices, internal affairs referrals, employee discipline, and procedures available to employees seeking return of seized property.

21.     The constitutional violations alleged herein were caused by an official policy, custom, practice, or decision of Nassau County and/or NCSD, including the practice of seizing and retaining employees' personal firearms without written notice, individualized findings, a prompt hearing, a meaningful appeal process, or any constitutionally adequate procedure for seeking return of the property.

22.     Alternatively, the constitutional violations alleged herein were caused by the acts and decisions of Defendant Sposato, who possessed final policymaking authority or acted with authority delegated by Nassau County with respect to the firearm seizure, restricted-duty placement, and continued retention of Greco's personal property.

23.     The actions taken against Greco were not random, unauthorized, or isolated acts by low-level employees. They were directed, approved, ratified, and/or implemented by senior NCSD leadership, including Commissioner Sposato, and therefore constituted official municipal action for purposes of 42 U.S.C. § 1983.

24.     Nassau County and/or NCSD further maintained a custom or practice of retaliating against, targeting, or depriving employees of rights without adequate process, including employees who disclosed disabilities or sought disability-related leave or benefits. This custom or practice was known to or should have been known to County and NCSD leadership, yet Defendants failed to correct it.

25.     As a direct and proximate result of these policies, customs, practices, decisions, and/or acts of final policymakers, Greco was deprived of his procedural due process rights under the Fourteenth Amendment.

## JURISDICTION, VENUE, AND PARTIES

26.     This Court has personal jurisdiction over Defendant Nassau County because it is a municipal corporation organized under the laws of the State of New York, maintains

governmental offices in Nassau County, New York, and conducts substantial governmental operations within the Eastern District of New York.

27. Defendant Nassau County Sheriff Department and/or Nassau County Department of Corrections is a department, division, agency, or administrative arm of Defendant Nassau County. To the extent the Nassau County Sheriff Department and/or Nassau County Department of Corrections is not a separate suable entity, all claims asserted against it are asserted against Defendant Nassau County.

28. This Court has personal jurisdiction over Defendant Michael Sposato because, upon information and belief, he resides in Nassau County, New York and/or conducts substantial official business within the Eastern District of New York.

29. This Court also has specific personal jurisdiction over Defendant Sposato because Plaintiff's claims arise out of acts and omissions committed by Sposato in Nassau County, New York, while acting under color of state law and in his capacity as Nassau County Commissioner of Corrections and/or as a policymaker for Nassau County, the Nassau County Sheriff Department, and/or the Nassau County Department of Corrections.

30. This Court has subject-matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331 and 1343 because Plaintiff asserts claims arising under the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 et seq.; Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a); and 42 U.S.C. § 1983 for violations of the Fourteenth Amendment to the United States Constitution.

31. This Court has supplemental jurisdiction over Plaintiff's state and local law claims, if any, pursuant to 28 U.S.C. § 1367 because those claims arise from the same nucleus of operative facts as Plaintiff's federal claims.

32. Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. §

1391(b) because Defendants reside in this District, conduct business and governmental operations in this District, and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in Nassau County, New York.

33.    At all relevant times, Defendant Nassau County, through the Nassau County Sheriff's Department, Nassau County Department of Corrections, and/or related agencies, received federal financial assistance and was therefore subject to Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a).

34.    At all relevant times, Defendant Nassau County, the Nassau County Sheriff's Department, the Nassau County Department of Corrections, and Defendant Sposato acted under color of state law for purposes of 42 U.S.C. § 1983.

35.    Plaintiff has satisfied all conditions precedent to the institution of this action, and/or such conditions have been waived, excused, or are otherwise inapplicable. Specifically, Plaintiff filed a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and has received a Notice of Right to Sue, thereby exhausting all administrative remedies.

<u>**STATEMENT OF FACTS**</u>

<u>**Plaintiff's Employment with Defendants**</u>

36.    As a Corrections Officer in NCSD, Greco was assigned to train the new recruits at the academy. This was a desirable assignment and it speaks to his competency and success at NCSD. At the academy, Greco trained hundreds of recruits that went on to have flourishing careers.

37.    Around 2009, the stressors and demands of his role with NCSD led Greco to seek professional help for his mental health and anxiety. He saw an independent psychologist on-and-off over the next few years.

38.    In September 2022, Greco was transferred to Medical Investigations (MI) and his rank was designated as Investigator. Greco had requested the transfer. This was also a desirable position and presumably a reward for a job well done at the academy.

39.    Some of MI's duties were investigating personnel on sick leave, ensuring no one was abusing NCSD's sick policy, debriefing NCSD senior staff (Greco was trusted with running several of those meetings), and conducting home visits.

40.    The MI unit was under the supervision of Corporal Christine Aggostinello ("Aggostinello") and ultimately under the authority of Captain Daniel Donohue ("Donohue"). During his time at MI, Greco began to notice inconsistencies in NCSD's application of home visits and how they were conducted and implemented.

41.    Greco observed that Aggostinello appeared to be targeting certain individuals based on race and showing favoritism to other races and personal friends. Extending extra freedom and latitudes to the latter.

42.    This systematic and corrupt practice was ongoing and pervasive. One night, while Aggostinello was out on vacation, Captain Fratto ("Fratto") came to the office and spoke to Greco. A rather unusual event seeing that Fratto was not assigned to MI.

43.    Fratto said he was looking for Aggostinello. When told Aggostinello was not available, Fratto began questioning MI's handling of his son's sick leave (Fratto's son was a member of NCSD out on sick leave).

44.    Greco suspected Fratto was searching for special considerations for his son. A clear and exploitative violation of NCSD policy.

45.    Greco informed Fratto that the policy was uniform and all members of service were treated the same. This did not sit well with Fratto, as he kept Greco standing at attention and began dressing him down as he stormed out of the office. It was unmistakable that Fratto

was looking for special considerations for his son and knew Aggostinello was the person to see.

46. Soon thereafter, Greco was passed over for his Corporal promotion. Due to the suspect timing of events, Greco believed the two incidents were linked. It is also noteworthy that after the incident with Fratto, Aggostinello began a pattern and practice of denying Greco overtime. Something that had never been done before.

47. Greco came to understand that overtime approval and disapproval was being used by Aggostinello as a way to intimidate and harass him.

48. Greco's coworker at MI was Officer Gary Heyman ("Heyman"). Like Aggostinello, Heyman operated outside the scope of his assignment and manipulated application NCSD's sick policy in a way that benefited himself and personal friends.

49. Greco brought this to the attention of Aggostinello. Aggostinello made clear to Greco that she did not like hearing about the abuses of the sick leave policy at MI that were going on- the unit she oversaw.

50. Aggostinello continued abusing the sick policy to her personal benefit and amplifying her mistreatment against Greco. Seeing implicit permission from a supervisor, Heyman began mistreating Greco as well. In one particular instance, Greco overhead Heyman on the phone saying, "I don't care what happens, I don't care if I fuck the office and the new guy over."

51. In July 2023, Heyman retired from NCSD and accepted a consulting role for Worker's Compensation. After retiring and ending his employment at NCSD, Heyman continued to call NCSD members out on sick leave illegally representing himself as an active NCSD officer with MI. Heyman obtained sensitive information under this illegal guise and fed it to Aggostinello.

52. In July 2023, Greco believed the entire office could be liable for this and

approached Aggostinello to discuss. Aggostinello began yelling at Greco. Greco stated that he felt that Aggostinello was "targeting him for just trying to adhere to department policy." Aggostinello responded with, "I'm talking to Donohue and we'll see about you." Aggostinello stormed out of the office.

53. Two days later, on a Saturday (Greco's regularly scheduled day off), Greco received a text from Donohue informing him he was transferred, effective immediately, to a Security Platoon assignment. The transfer was not done by NCSD protocol and in violation of Greco's union contract. This came at a difficult time for Greco, whose father had been dealing with significant health issues which required a lot of care from Greco.

54. The entirety of the situation caused Greco to suffer an acute anxiety attack that necessitated an ambulance transport to a hospital.

55. Greco reported the following Monday to his new assignment. The transfer to this much less desirable Security Patrol position lasted approximately 4-weeks.

56. In August 2023, Donohue called Greco informing him that Commissioner Sposato wanted to speak to him. Donohue assured Greco that this was a friendly chat and that he would not need union representation. Greco came to Sposato's office. In that meeting was Greco, Sposato, Donohue, and a NCSD attorney.

57. Under the guise that this was a friendly chat, Donohue began asking Greco about his father and his father's health. The conversation veered into Greco's health. Believing that this was congenial conversation and having a personal relationship with Donohue, Greco began opening up about his own mental health issues and disclosed that he was suffering from anxiety and PTSD.

58. Donohue pressed further and Greco admitted to occasionally taking prescribed sleep medication and undergoing treatment for his mental health. The ruse ended here, as the

NCSD attorney spoke up for the first time and declared without context or a medical license, that the doctor prescribed medication was a scheduled narcotic and that Greco would have to surrender his firearms.

59.    Greco was shocked at the turn of events. He was deceived into discussing his personal health and that information was used against him in retaliatory fashion.

60.    Greco was then told by Sposato to surrender his duty and personal firearms or risk having Internal Affairs "go through his entire home." Greco understood this as a threat from the highest ranking member of NCSD.

61.    Greco was directed to contact a lieutenant from Internal Affairs. That lieutenant was ordered to retrieve his firearm from his duty locker. After doing so, Greco was then directed to go to his home, collect his personal firearms, and bring them back to Sposato's office. The firearms were vouchered and Greco was given no timetable or means to recover his property.

62.    In sum, Defendants violated their own policies for failing to conduct a meaningful investigation, failing to hold an administrative hearing, and failing to provide Greco a right to appeal. Additionally. violating Greco's due process rights. As of the filing of this complaint, Greco's department issued and personal firearms are still retained by NCSD.

63.    After the firearms were removed, Greco was transferred yet again to restricted administrative duty in Donohue's office. The second unrequested transfer in a month and another example of NCSD's continued retaliation and abuse against Greco.

64.    During Greco's restricted administrative role in Donohue's office, his father's health became worse. Greco took FMLA to care for his father in September 2023. While on FMLA, NCSD passed over his promotion a third time.

65.    Greco believed this promotional pass over was a pretext for retaliation for taking

FMLA. Additionally, this last promotional pass over was in violation of Greco's union contract as it sought to promote officers from a lower banded score than Greco.

66. Furthermore, this being the third pass over, NCSD was required to present a valid reason for passing Greco over, which NCSD refused to do.

67. Already suffering from anxiety due to a stressful and toxic work environment, this egregious and retaliatory conduct only served to further exacerbate Greco's anxiety and worsen his health.

68. An added layer of insult to this already horrible situation is that NCSD refused to pay Greco proper wages during his FMLA leave. Greco had to take a retirement loan to cover the costs of living and medical services for his sick father.

69. The facts surrounding Greco's filing seem almost unbelievable, until you consider that all the abuse and retaliation by NCSD came while indicted perjurer Sposato oversaw the department.

70. Ultimately and understandably, Greco's mental health deteriorated and he was placed on disability leave. Another personal gripe of Sposato's. In a recent Eastern District ruling, Judge Gary Brown found:

> **As to deceit and malice, Sposato evidenced both. His animosity toward the officers who accepted disability pension is evident throughout the record. Sposato also proved deceitful in his official actions, in correspondence and even during his testimony at the Inquest. Thus, this second factor is present in abundance. Third, in terms of repeated instances of conduct, his actions were systematic in nature, with recurrent administrative steps along with efforts to dissemble and conceal his true purposes. Thus, across the spectrum of these considerations, Sposato's actions were highly reprehensible, particularly when emanating from one of the County's chief law enforcement officers.**

71. While Greco was on disability leave, the retaliation against him continued unchecked, culminating in NCSD passing over his promotional list-number for a fourth time in April 2025.

72. The culmination of these continuous, retaliatory, and discriminatory actions, including the unconstitutional seizure of his firearms, the punitive transfers, the deprivation of wages, and the repeated, pretextual denials of his earned promotions, created a hostile and objectively intolerable work environment.

73. Stripped of his professional dignity, his property, and his career advancement trajectory, Greco had no reasonable alternative but to sever ties with the department to preserve his remaining health. Consequently, on May 14, 2026, Greco was constructively discharged from his position with NCSD.

74. Clearly, Sposato has a history of abuse and disdain for his officers with no qualms going outside the scope of his authority and the law to retaliate as he sought fit.

75. Plaintiff retained TA Legal Group PLLC as counsel to represent Plaintiffs and FLSA Collective Plaintiffs in this litigation and agreed to pay the firm a reasonable fee for its service.

**Greco Was An Eligible Employee and Legally Exercised FMLA**

76. Greco satisfies the statutory definition of an "eligible employee" under 29 U.S.C. § 2611(4) and 29 C.F.R. §§ 825.104–.108, as he (1) was employed by the same employer for more than twelve months and (2) was an employee of a public agency.

77. Accordingly, Greco was entitled to take up to twelve weeks of leave to care for a parent with a serious health condition pursuant to 29 U.S.C. § 2612(a)(1)–(3) and 29 C.F.R. §§ 825.112–.127.

78.    Greco lawfully exercised this right when he took twelve weeks of leave to care for his ill father from September 2023 through January 2024.

## CAUSES OF ACTION

**COUNT I - VIOLATION OF FAMILY AND MEDICAL LEAVE ACT 1993**
**29 U.S.C. § 2615(a)(1)–(2) and 29 C.F.R. § 825.220(c)**
**Plaintiff is Entitled to Recover Damages for Retaliation by Defendants for Exercising FMLA Rights**

79.    Plaintiff realleges and incorporates all the foregoing paragraphs as fully set forth herein.

80.    In September 2023, Greco exercised his statutorily protected rights under the Family and Medical Leave Act ("FMLA") to care for his seriously ill father, taking protected leave through January 2024.

81.    To establish a prima facie case of retaliation under the FMLA, a plaintiff must demonstrate that: (1) he exercised rights protected under the FMLA; (2) he was qualified for his position; (3) he suffered a materially adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of retaliatory intent. See *Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 429 (2d Cir. 2016); *Potenza v. City of N.Y.*, 365 F.3d 165, 168 (2d Cir. 2004).

82.    The FMLA prohibits employers from interfering with, restraining, or denying the exercise of protected rights, and from retaliating against employees for exercising those rights. 29 U.S.C. § 2615(a)(1)–(2); 29 C.F.R. § 825.220(c). This protection extends to employer conduct both during and after an employee's FMLA leave. *See Kirkland-Hudson v. Mount Vernon City Sch. Dist.*, 665 F. Supp. 3d 412, 470 (S.D.N.Y. 2023).

83.    In the retaliation context, a materially adverse employment action is any action that "could well dissuade a reasonable worker from exercising" FMLA rights. *Burlington N. &*

*Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).

84.    Defendants engaged in a continuous pattern of materially adverse employment actions against Greco both during and after his protected leave. Specifically, in November 2023, while Greco was actively on FMLA leave, Defendants passed over his promotional score for a third time.

85.    In effectuating this pass-over, Defendants intentionally bypassed Greco by selecting from a lower band of scores, in direct violation of the "Rule of Three" set forth in New York Civil Service Law § 61(1). This deviation from established civil service procedures, coupled with Defendants' failure to provide a required explanation under the applicable union contract, constitutes strong circumstantial evidence of retaliatory intent.

86.    Additionally, during his protected leave, Defendants unlawfully withheld compensation owed to Greco. This deprivation of wages imposed significant financial hardship and would dissuade a reasonable employee from exercising FMLA rights.

87.    Defendants' retaliation did not end when Greco's FMLA leave concluded. Rather, Defendants continued to subject Greco to adverse actions and career obstruction, including another promotional pass-over in April 2025, marking the fourth time Defendants denied him advancement despite his eligibility and qualifications.

88.    Defendants' repeated refusals to promote Greco, withholding of compensation, and continued use of his protected leave as a negative factor in employment decisions caused a significant setback to his career, diminished his earnings and benefits, and constituted unlawful retaliation in violation of 29 U.S.C. § 2615(a)(1)–(2) and 29 C.F.R. § 825.220(c).

89.    The cumulative effect of Defendants' retaliatory conduct created objectively intolerable working conditions and contributed to Greco's constructive discharge on May 14, 2026.

90.    As a direct and proximate result of Defendants' unlawful retaliation, Greco suffered lost wages, lost benefits, actual monetary losses, and other economic harm.

91.    Accordingly, Plaintiff is entitled to recover back pay, front pay or other equitable relief, lost benefits, actual monetary losses, liquidated damages, interest, and reasonable attorneys' fees and costs pursuant to the FMLA.

## COUNT II - VIOLATION OF SECTION 504 OF THE REHABILITATION ACT OF 1973
### 29 U.S.C. § 794(a)
### Plaintiff Is Entitled to Recover Damages for Disability Discrimination, Failure to Accommodate, and Retaliation

92.    Plaintiff realleges and incorporates all the foregoing paragraphs as fully set forth herein.

93.    At all relevant times, NCSD and/or Nassau County received federal financial assistance and was therefore subject to Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a).

94.    Greco suffers from clinically diagnosed anxiety and PTSD, for which he has sought and received ongoing treatment from a licensed mental-health provider. These conditions substantially limited one or more major life activities, including working, sleeping, concentrating, thinking, and/or caring for himself.

95.    The Rehabilitation Act protects qualified individuals with disabilities from discrimination by federally funded programs and activities. 29 U.S.C. § 794(a). Under Section 504 and its implementing regulations, a disability includes a physical or mental impairment that substantially limits one or more major life activities. 45 C.F.R. § 84.4. Anxiety, PTSD, and other mental-health conditions may qualify as disabilities where they substantially limit major life activities. See *Kelly v. N.Y. State Off. of Mental Health*, 200 F. Supp. 3d 378, 391–92 (E.D.N.Y. 2016).

96. At all relevant times, Greco was a qualified individual with a disability because, with or without reasonable accommodation, he could perform the essential functions of his position.

97. To establish a failure-to-accommodate claim under the Rehabilitation Act, a plaintiff must show that: (1) he is a person with a disability under the statute; (2) the employer had notice of the disability; (3) with reasonable accommodation, he could perform the essential functions of the job; and (4) the employer refused to make such accommodation. See *Natofsky v. City of N.Y.*, 921 F.3d 337, 352 (2d Cir. 2019); *Noll v. Int'l Bus. Machs. Corp.*, 787 F.3d 89, 94 (2d Cir. 2015).

98. Upon notice of a disability, an employer must engage in a good-faith interactive process to determine whether an appropriate reasonable accommodation is available. A failure to engage in that process may support an inference of disability discrimination. See *Noll*, 787 F.3d at 98.

99. In August 2023, Greco was called into a meeting with NCSD leadership, including Sposato, Donohue, and an NCSD attorney. During that meeting, Greco disclosed his clinical diagnoses of anxiety and PTSD, described the challenges he faced, and placed Defendants on notice of his disability.

100. Instead of engaging in any individualized assessment or good-faith interactive process, Defendants immediately weaponized Greco's disclosure against him. Without medical qualification, medical evidence, a fitness-for-duty evaluation, or any individualized determination that Greco could not perform his duties, Defendants declared that Greco was consuming a "scheduled narcotic," ordered him to surrender his duty and personal firearms, and placed him in a restricted administrative role.

101. Defendants' seizure of Greco's firearms, involuntary reassignment to restricted

administrative duty, removal from ordinary law-enforcement functions, and obstruction of promotional opportunities constituted materially adverse employment actions. For a law-enforcement officer, the seizure of firearms and removal from armed duties materially diminishes job responsibilities, professional status, advancement opportunities, and earning capacity.

102.   Section 504 also prohibits retaliation against an individual for opposing disability discrimination, requesting accommodation, or otherwise asserting rights protected by the Rehabilitation Act. To establish retaliation, a plaintiff must show that: (1) he engaged in protected activity; (2) the employer was aware of that activity; (3) the employer took adverse action against him; and (4) a causal connection exists between the protected activity and the adverse action. See *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002).

103.   Greco engaged in protected activity by disclosing his disability, objecting to Defendants' disability-based treatment, and seeking to continue performing his job without discriminatory restrictions. Defendants were aware of that protected activity because the disclosure and resulting dispute occurred directly in the presence of NCSD leadership, including Sposato, Donohue, and an NCSD attorney.

104.   The causal connection between Greco's protected disclosure and Defendants' adverse actions is supported by the immediate temporal proximity between his disclosure of his mental-health conditions and Defendants' punitive response. See *Treglia v. Town of Manlius*, 313 F.3d 713, 720 (2d Cir. 2002) ("We have held that a close temporal relationship between a plaintiff's participation in protected activity and an employer's adverse actions can be sufficient to establish causation."); see also *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90–91 (2d Cir. 2015) (holding that, at the pleading stage, retaliatory causation may be shown indirectly by alleging that protected activity was followed closely by adverse treatment). Immediately

after Greco disclosed his anxiety and PTSD to NCSD leadership, Defendants seized his firearms, reassigned him to restricted administrative duty, and materially altered the terms and conditions of his employment.

105. The retaliation and disability-based discrimination continued thereafter. Defendants' conduct exacerbated Greco's anxiety and PTSD, forced him onto disability leave, and culminated in NCSD passing him over for promotion for a fourth time in April 2025.

106. The cumulative effect of Defendants' disability-based discrimination, failure to accommodate, retaliation, seizure of firearms, restricted-duty assignment, loss of career advancement, and continued hostile treatment created objectively intolerable working conditions and resulted in Greco's constructive discharge on May 14, 2026.

107. Defendants' actions were taken because of Greco's disability, and Greco's disability was a but-for cause of Defendants' discriminatory and retaliatory actions. See *Natofsky*, 921 F.3d at 348–50.

108. Accordingly, Plaintiff is entitled to equitable and injunctive relief, back pay, front pay, compensatory damages for emotional distress, mental anguish, pain and suffering, out-of-pocket losses, medical expenses, and reasonable attorneys' fees and costs.

**COUNT III - VIOLATION OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION**
**42 U.S.C. § 1983 – Procedural Due Process**
**Plaintiff Is Entitled to Recover Damages for Defendants' Unlawful Seizure and Continued Retention of His Firearms Without Due Process**

109. Plaintiff realleges and incorporates all the foregoing paragraphs as fully set forth herein.

110. The Fourteenth Amendment prohibits a state actor from depriving a person of property without due process of law. U.S. Const. amend. XIV, § 1. Property interests are

protected by the Due Process Clause and may not be deprived without constitutionally adequate procedures. See *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976); *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542–46 (1985).

111.    Greco possessed a protected property interest in his personal firearms. Defendants deprived Greco of that property interest when, acting under color of state law, they coerced him into surrendering his personal firearms and then retained those firearms without notice, written findings, a hearing, a meaningful investigation, an individualized assessment, or a meaningful procedure to challenge the deprivation and obtain return of his property.

112.    Defendants may contend that Greco's surrender of his firearms was voluntary. That contention ignores the coercive circumstances under which the surrender occurred. Greco was pressured by Commissioner Sposato, one of the highest-ranking officials in the department, to relinquish his firearms under threat of Internal Affairs action and further retaliation. Under these circumstances, Greco's surrender was not the product of voluntary consent.

113.    Even if Defendants could claim a temporary safety-based justification for initially securing Greco's firearms, due process required Defendants to provide prompt and meaningful post-deprivation procedures to challenge the continued retention of his property. See *Panzella v. Sposato*, 863 F.3d 210, 218–20 (2d Cir. 2017) (addressing Nassau County's continued retention of seized firearms and recognizing due-process protections in the context of firearm retention); *Spinelli v. City of New York*, 579 F.3d 160, 170–74 (2d Cir. 2009) (holding that due process required constitutionally sufficient notice and a meaningful opportunity for a post-deprivation hearing following seizure of firearms inventory and suspension of a firearms license).

114.    No such process was afforded to Greco. Defendants seized and retained his firearms without prior notice, without any formal or informal hearing, without written justification, without a fitness-for-duty evaluation, without a meaningful investigation or

individualized assessment, and without any avenue to challenge the deprivation or seek return of his property.

115. Defendants cannot rely on ordinary post-deprivation remedies to cure this constitutional violation because the deprivation was not random or unauthorized. It was carried out by senior NCSD leadership, including Commissioner Sposato, and reflected an official or established decision by high-ranking government officials. Where a deprivation results from established governmental procedure or the acts of officials with final or high-level authority, constitutionally adequate pre-deprivation or prompt post-deprivation process is required. See *Hudson v. Palmer*, 468 U.S. 517, 532 (1984); *Panzella*, 863 F.3d at 218–20.

116. Defendants' seizure and continued retention of Greco's firearms therefore violated his procedural due process rights under the Fourteenth Amendment and are actionable pursuant to 42 U.S.C. § 1983.

117. The due process violations alleged herein were caused by the official policies, customs, practices, decisions, and/or final policymaking acts of Nassau County, NCSD, and Commissioner Sposato, and are therefore actionable against the municipal Defendant under 42 U.S.C. § 1983.

118. Accordingly, Plaintiff is entitled to compensatory damages, nominal damages, injunctive and declaratory relief, reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988, and punitive damages against the Individual Defendants where legally available.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself, respectfully requests that this Court enter judgment in his favor and against Defendants and grant the following relief:

a. A declaratory judgment that the practices complained of herein are unlawful and violate the Family and Medical Leave Act of 1993, Section 504 of the Rehabilitation Act of 1973, and the Fourteenth Amendment to the United States Constitution;

b. An injunction permanently enjoining Defendants and their officers, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful practices, policies, and patterns set forth herein;

c. An order requiring Defendants to provide constitutionally adequate procedures concerning the continued retention of Plaintiff's personal firearms, including written notice, a meaningful opportunity to be heard, and a procedure for seeking return of the property;

d. An award of back pay, front pay, and lost benefits under the FMLA;

e. An award of actual monetary losses under the FMLA;

f. An award of liquidated damages under the FMLA;

g. An award of back pay and front pay under the Rehabilitation Act;

h. An award of interest, reasonable attorneys' fees, costs, and expenses under the FMLA, 29 U.S.C. § 2617;

i. An award of compensatory damages for emotional distress and mental anguish under the Rehabilitation Act ;

j. An award of compensatory damages for pain and suffering under the Rehabilitation Act;

k. An award of damages for out of pocket medical expenses under the Rehabilitation Act;

l. An award of reasonable attorneys' fees, costs, and expenses under the Rehabilitation Act, 29 U.S.C. § 794a;

m. An award of compensatory damages, including lost wages and benefits, pursuant to 42 U.S.C. § 1983 for Defendants' violation of Plaintiff's Fourteenth Amendment rights;

n. An award of damages for emotional distress pursuant to 42 U.S.C. § 1983 for Defendants' violation of Plaintiff's Fourteenth Amendment rights;

o. An award of nominal damages pursuant to 42 U.S.C. § 1983 for Defendants' violation of Plaintiff's Fourteenth Amendment rights;

p. An award of punitive damages against the Individual Defendants, where legally available, pursuant to 42 U.S.C. § 1983 for Defendants' violation of Plaintiff's Fourteenth Amendment rights;

q. An award of declaratory and injunctive relief requiring Defendants to cease retaining Plaintiff's property without due process of law and to return Plaintiff's personal firearms or provide constitutionally adequate procedures for challenging their continued retention;

r. An award of pre-judgment and post-judgment interest at the maximum rate

permitted by law;

s. An award of costs and expenses of this action, together with reasonable attorneys' fees pursuant to the FMLA, 29 U.S.C. § 2617, the Rehabilitation Act, 29 U.S.C. § 794a, 42 U.S.C. § 1988, and all other applicable statutes; and

t. Such other and further legal, equitable, and remedial relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated:        Huntington, NY
              June 5, 2026

                        **TA LEGAL GROUP PLLC**
                        *Attorneys for Plaintiff*

By:     _____
        Taimur Alamgir, Esq.
        Matthew Daidola, Esq.
        205 East Main Street, Suite 3-2
        Huntington, NY 11743
        Tel. (914) 552-2669
        tim@talegalgroup.com
        matthew@talegalgroup.com